COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

FRANK J. HOLDAMPF, Individually and             )

d/b/a PATRIOT OIL COMPANY,                       )            
No.  08-02-00174-CV

                                                                              )

Appellant,                          )                 
Appeal from the

                                                                              )

v.                                                                           )             
385th District Court

                                                                              )

JASMINE ROAD DEVELOPMENT                    )         
of Midland County, Texas

COMPANY, L.L.C.,                                            )

                                                                              )               
(TC# CV-43,129)

Appellee.                           )

                                                                              

 

MEMORANDUM 
OPINION

 

This suit involves
a land dispute between Appellant Frank J. Holdampf d/b/a Patriot Oil Company (AMr. Holdampf@) and Appellee Jasmine Road
Development Company, L.L.C. (AJasmine@).  Appellant Frank J.
Holdampf proceeding pro se appeals the summary judgment order entered in
favor of Jasmine, in which the trial court found that Mr. Holdampf did not have
nor may lawfully claim any right, title, or interest in the disputed
property.  On appeal, Mr. Holdampf challenges the trial court=s granting of summary
judgment in this case.  We affirm.








In August 1995,
Mr. Holdampf d/b/a Patriot Oil Company purchased an abandoned gas station in Midland, Texas.  After hard work and long hours, Patriot Oil Company opened in April
1996.  The business was successful and Mr. Holdampf made plans for future
expansion to create Patriot Land, a full service 24-hour travel center.  Mr.
Holdampf contacted Ralph Kessler and Peggy Lee Wilson, the owners of an
adjacent 26 to 28-acre property, to find out if they were interested in selling
the property to him.








In May 1996, Mr.
Kessler and his sister-in-law, Ms. Wilson, responded to Mr. Holdampf=s inquiry.  In
considering Mr. Holdampf=s
offer letter, Ms. Wilson stated in a letter to her brother-in-law that A[t]he favorable issues are
Mr. Holdampf=s offer
to have West Texas Title Co., do all the paper work and pay for all closing
costs...plus...taking that >Hole= off our hands are very
favorable.@  Ms.
Wilson also stated that she would definitely consider $1,000 per acre, but was
open to further negotiation.  By letter dated June 3, 1996, Mr. Holdampf
offered to pay $750 per acre and the closing costs.  On June 12, 1996, Mr.
Kessler wrote to Mr. Holdampf, informing him that they had decided to accept
his offer of $750 per acre with Mr. Holdampf to pay all closing cost and all
taxes for the year 1996, but with no mineral rights to be conveyed.  Mr.
Kessler included copies of the tax bills for the property.  In his reply
letter, Mr. Holdampf informed Mr. Kessler and Ms. Wilson that all of the
property indicated in the tax bills could be included in their sale at the same
price.  Mr. Holdampf also stated that he would Aget things started with the Title Co. as soon
as I have your answer on the 2.741 acres.@ 
With the letter, Mr. Holdampf enclosed two $1,000 checks as good faith
acceptance for the offer to sell the property.  On July 16, 1996, Mr.
Kessler sent Mr. Holdampf a letter stating, AI
talked with Peggy yesterday and it is agreeable with both parties for the sale
of all acres in question.  That is the reason I stated in my previous
letter, more or less.  I am sending a copy of your letter and check to
Peggy today.  Looking forward to hearing from you in the near future.@  Mr. Kessler and Ms.
Wilson, each endorsed their respective checks and the funds were withdrawn from
Mr. Holdampf=s
account.  According to Mr. Holdampf=s
affidavit, Mr. Kessler and Ms. Wilson did not specify a certain date for
closing the sale and discharging of their contract.

Over a year and a
half later, Mr. Kessler and Ms. Wilson in consideration for ten dollars amended
a right-of-way easement, presently owned by Fin-Tex Pipe Line Company, over the
same property that was purportedly the subject of their negotiated land deal
with Mr. Holdampf.  On September 21, 1999, Mr. Kessler conveyed 131.16
acres in Section 8, Block 39, T-2-S, T&P RR Company Survey in Midland County to Charles Wiggins by a quitclaim deed.  This conveyance included the
26 to 28-acre property now in dispute.  On March 31, 2000, Mr. Wiggins
conveyed the 131.16 acre property to Jasmine by quitclaim deed.  In the
deed, Jasmine indemnified and agreed to hold Mr. Wiggins harmless against any
loss or claim arising by reason of Mr. Wiggins=
ownership of the conveyed property.

In June 2000, Mr.
K. Bryan Reeves, Manager of Jasmine, wrote to Mr. Holdampf and informed him
that the company was being required to clean up the property.  Mr. Reeves
stated that he had arranged for a contractor to dispose of timber and trash on
the property and that the company could make arrangements for Mr. Holdampf to
retrieve anything he wanted beforehand.  In response, Mr. Holdampf sent a
letter on June 12, 2000, in which he stated that he wanted nothing touched on
his property and threatened to file criminal trespass and theft charges if
necessary.  Mr. Holdampf informed Mr. Reeves that he intended to bring a
lawsuit against the company and other parties for numerous causes of
action.  A similar demand letter was sent to Mr. Kessler, Ms. Wilson, T.C.
Tubb, Bob Wiggins, CMS Oil and Gas Company, and a representative of Fin-Tex
Pipeline Company.  On June 16, 2000, in a letter addressed to Patriot Oil
Company, Ms. Wilson wrote:








[Mr. Holdampf=s] letter came as a shock
to say the least - the threats - harsh language and the long list of
allegations are simply beyond my understanding or any reasons for any of it.

I have next to no
knowledge of that land in Texas, not having been in Texas for approx. 45 years
- other than pay the yearly taxes up to the date the land was sold to Mr.
Wiggins . . .  Also a few inquiries through the years with offers to
purchase the land or the mineral rights and or both- none of which went
anywhere.  It was my wish and that of my brother-in-law >Ralph Kessler= to get rid of that land
for a number of years.

Then Mr. Holdampf
contacted my Brother-in-law offering to purchase the land which pleased us
both.  In time he sent us each a check for >1,000.00= with a letter stating in
several months he=ll
have all the paper work completed - then the signing, the monies and sale
completed.  Instead several months passed, nothing from Mr. Holdampf -
couple more months passed, Both, myself and my Brother-in-law tried on many
occasions to contact Mr. Holdampf via phone and letters- no response of any
kind - ever again - until the letter and other papers arrived yesterday- we
even thought he could have gotta [sic] ill or even passed away.

 

                                                              .              
.              
.

 

I simply cannot
understand Mr. Holdampf=s
having any claim to that land - though he did send (2) checks- to me and my
Brother-in-law after that we never heard from him again - nor did he respond at
all to our calls or letters.

 








In September 2000,
Jasmine filed suit against Mr. Holdampf, seeking a declaratory judgment that
Mr. Holdampf d/b/a Patriot Oil Company did not own any right, title, or
interest to the 28-acre property in dispute.  Jasmine also sought recovery
of its attorneys fees and court costs for bringing its action.  In Mr.
Holdampf=s amended
original answer, he brought numerous counterclaims and cross claims against
Jasmine and third party defendants, Ralph Kessler, Peggy Lee Wilson, T.C. Tubb,
Bob Wiggins, K. Bryan Reeves, Fin-Tex Pipeline Company and CMS Oil and Gas
Company.  Specifically, Mr. Holdampf=s
pleading alleged a Across-claim
and counterclaim for breach of contract, interference with contractual
relationship, violation of my rights under the deceptive trade practices act,
consumer fraud, intentional infliction of emotional distress, combination,
fraud, slander of title, unlawful conversion, violation of my civil rights,
discrimination, fraudulent concealment of pre-existing contract with dolus
malice, mail fraud, fraudulent misrepresentation, conspiracy, violation of the
Hobbs Act and bad faith.@ 
Mr. Holdampf sought to recover damages in the amount of three billion dollars
and requested the court to order conveyance by a warranty deed for the property
to Patriot Oil Company along with mineral rights.  Jasmine filed a motion
to quash the third-party claims and after a hearing, the trial court granted
the motion and overruled Mr. Holdampf=s
motion to bring third-party complaints.








On March 14, 2001,
Jasmine moved for summary judgment on its claims and Mr. Holdampf=s counterclaims, arguing
that summary judgment evidence showed that Mr. Holdampf did not have a deed to
the property, that his alleged contract for purchase of the property could not
survive the Statute of Frauds, and that regardless, any claims for enforcement
of the alleged contract were barred by the statute of limitations.[1] 
Specifically, Jasmine asserted that there were no genuine issues of material
fact with respect to Mr. Holdampf not owning an interest in the property and
that his counterclaims must fail because he did not set forth allegations to
show the elements of the causes of action he plead.[2] 
Mr. Holdampf did not file a response to the summary judgment motion prior to
the hearing.  However, the trial court permitted Mr. Holdampf to file a
supplemental response after the January 2, 2002 hearing.  In his
supplement, Mr. Holdampf argued that he had title to the 26-acre property by
contract, that he had purchased the land from Mr. Kessler and Ms. Wilson, and
that the contract for sale is binding on the parties until closing.  Mr.
Holdampf did not present any additional evidence in support of his arguments.

On January 16,
2002, the trial court granted Jasmine=s
summary judgment motion, finding that there exists no genuine issue of material
fact with respect to Mr. Holdampf=s
not having any claims to the property and that any right, title, or interest in
the property which Mr. Holdampf could have claimed is barred by the applicable
statute of limitations.  Further, the trial court found that no
contractual relationship had been shown to the property sufficient to meet the
requirements of the Statute of Frauds.  The trial court awarded Jasmine
its reasonable attorneys=
fees and held that Mr. Holdampf take nothing from his counterclaims.  Mr.
Holdampf now brings this appeal.








In Issue One, Mr.
Holdampf contends that the trial court erred in granting summary judgment.[3] 
Pointing to his affidavit in summary judgment evidence, Mr. Holdampf argues
that he has title to the twenty-eight acres by contract and that Patriot Oil
Company still owes a balance on the purchase of the land to Mr. Kessler and Ms.
Wilson.  We observe that Mr. Holdampf raises no complaint on appeal as to
the trial court=s
ruling on his counterclaims in its order granting summary judgment.

Standard
of Review

Under traditional
summary judgment, the moving party has the burden of establishing that there is
no genuine issue of material fact and that it is entitled to summary judgment
as a matter of law.  See Tex.R.Civ.P.
166a(c); Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548
(Tex. 1985).  The question on appeal is not whether the summary judgment
proof raises fact issues as to the elements of the movant=s cause or claim, but
rather whether the summary judgment proof establishes, as a matter of law, that
there is no genuine issue of material fact as to one or more elements of movant=s cause or claim.  Wyatt
v. Longoria, 33 S.W.3d 26, 31 (Tex.App.--El Paso 2000, no pet.).  In
determining whether there is a disputed material fact issue precluding summary
judgment, the court must take evidence favorable to the non-movant as true and
indulge every reasonable inference in favor of the non-movant.  Nixon,
690 S.W.2d at 548-49; Collins v. County of El Paso, 954 S.W.2d 137, 145
(Tex.App.--El Paso 1997, pet. denied). 








Here, Jasmine
asserted that there were no genuine issues of material fact with respect to Mr.
Holdampf not owning an interest in the property and that his counterclaims must
fail because he did not set forth allegations to show the elements of the
causes of action he asserted.  Jasmine argued that the exchange of
correspondence between Mr. Holdampf, Mr. Kessler, and Ms. Wilson did not create
any enforceable agreement for purchase of the property that could survive the
statute of frauds.  Jasmine also argued that even if the correspondence
constituted some form of agreement, Mr. Holdampf=s
claims to the property because of that agreement were now barred by the statute
of limitations.

The summary
judgment evidence showed that Mr. Holdampf did not hold a deed to the disputed
property.  However, during June and July of 1996, Mr. Holdampf, Mr.
Kessler, and Ms. Wilson had formed an agreement in which Mr. Holdampf was to
purchase at least twenty-six acres of surface land, to pay all closing costs
and property taxes for year 1996, and make arrangements with the title company
to close the deal.  In July 1996, Mr. Kessler accepted the two $1,000
checks from Mr. Holdampf and expected to hear from him in the Anear future.@  According to Ms.
Wilson=s letter in
June 2000, she and her brother-in-law were unable to reach Mr. Holdampf to
close the deal, however, Mr. Holdampf stated in his affidavit that Mr. Kessler
and Ms. Wilson never specified a certain date for the closing and discharging
of the contract.








Under Section
16.004 of the Texas Civil Practice and Remedies Code, a person must bring suit
for specific performance of a contract for the conveyance of real property not
later than four years after the day the cause of action accrues.  See
Tex.Civ.Prac.&Rem.Code Ann. ' 16.004(a)(1)(Vernon
2002).  Mr. Holdampf did not make any claim nor brought any suit for
specific performance or other enforcement of the alleged contract between him
and Mr. Kessler and Ms. Wilson until he asserted his counterclaim against them
in December 2000.  Therefore, Mr. Holdampf=s
potential claim on the property is barred by the applicable statute of
limitations as a matter of law.  Mr. Holdampf did not file a response to
Jasmine=s motion for
summary judgment until after the summary judgment hearing and then only by
invitation of the court.  In his supplemental response, Mr. Holdampf
presented no evidence that created a genuine issue of material fact with
respect to his claim to the property being barred by the statute of
limitations.  Therefore, the trial court did not err in granting summary
judgment in favor of Jasmine on this ground.  Issue One is overruled.

Remaining
Issues

In the AIssues Presented@ section of his appellate
brief, Mr. Holdampf raises four additional issues in which he argues the trial
court:  (1) erred by meeting ex parte with opposing counsel and
then dismissing the third-party cross claims; (2) did not have jurisdiction to
grant summary judgment while the Bankruptcy Court=s
order of remand was being appealed to the federal district court; (3) erred in
granting summary judgment because the Bankruptcy Court had already ruled at the
exemption hearing that the property was part of the bankruptcy estate and a
business homestead exemption; and (4) awarded attorneys fees to chill his
constitutional right to appeal.

Mr. Holdampf cites
no legal authority in support of his arguments concerning the remaining
issues.  Under Rule 38.1(h) of the Texas Rules of Appellate Procedure, an
appellant=s brief must
contain a clear, concise argument for the contentions made, including
appropriate citations to authorities and to the record.  See Tex.R.App.P. 38.1(h).  An issue
not supported by authority is waived.  Nguyen v. Kosnoski, 93
S.W.3d 186, 188 (Tex.App.‑-Houston [14th Dist.] 2002, no pet.). 
Thus, Mr. Holdampf has waived appellate review of his remaining issues.

For the reasons
stated above, we affirm the trial court=s
judgment.  

June 24, 2004

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.









[1]
While the summary judgment motion was pending, Mr. Holdampf filed for Chapter
13 bankruptcy in the Bankruptcy Court on March 22, 2001.  The bankruptcy
case was later converted to a case under Chapter 11 on May 9, 2001.  On
November 6, 2001, the Bankruptcy Court judge granted an order for relief from
the automatic stay and permitted this cause to proceed in the trial
court.  On December 10, 2001, Mr. Holdampf filed a notice of removal in
the Bankruptcy Court.  On December 18, 2001, the Bankruptcy Court judge
remanded the parties=
property case back to the trial court and ordered that the trial court proceed
with this cause.  On January 2, 2002, the day of the summary judgment
hearing, Mr. Holdampf filed an emergency notice of appeal in the Bankruptcy
Court, arguing that the property case should be decided in federal court.





[2]
In addition to the summary evidence discussed above, Jasmine also introduced
into evidence the affidavit of K. Bryan Reeves, in which Mr. Reeves attested
that he reviewed the public deed records of Midland County, Texas and found
that they contain no deed or other conveyance from Ralph Kessler or Peggy Lee
Wilson to Frank J. Holdampf from January 1, 1996 to the date of the affidavit,
March 8, 2001.





[3]
We note that Mr. Holdampf did not argue in the trial court nor does he complain
on appeal that Jasmine=s
suit was in the nature of a trespass to try title action and should have been
treated as such, contrary to any artful pleading on Jasmine=s part.  See Tex.Prop.Code Ann. ' 22.001(a)(Vernon
2000)(AA trespass to
try title action is the method of determining title to lands, tenements, or
other real property.@);
Rogers v. Ricane Enteprises., Inc., 884 S.W.2d 763, 768 (Tex. 1994)(To
recover in a trespass to try title action, the plaintiff must recover upon the
strength of his own title by proving:  (1) a regular chain of conveyances
from the sovereign; (2) a superior title out of a common source; (3) title by
limitations; or (4) prior possession, and that the possession has not been
abandoned).